FILED

February 17 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0288

DA 14-0288

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 45N

IN THE MATTER OF:

S.W.,

     A Youth in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDN 13-045
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

         Julie Brown, Montana Legal Justice, PLLC, Missoula, Montana

     For Appellee:

         Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

         John Parker, Cascade County Attorney, Jennifer Quick, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs:  January 21, 2015
Decided:  February 17, 2015

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 N.W. (Mother) appeals from the order of the Eighth Judicial District Court, Cascade County, terminating her parental rights to her child S.W. We affirm.

¶3 The issue presented for review is whether the District Court erred when it found that the conduct or condition rendering Mother unfit to parent was unlikely to change within a reasonable time.

¶4 S.W., born in 2013, is Mother's second child. Mother's first child was removed by the Department of Public Health and Human Services (Department) in 2011. Mother's rights to that child were terminated in 2013, after Mother failed to complete her treatment plan. *In re K.L.*, 2014 MT 28, 373 Mont. 421, 318 P.3d 691. S.W. was born while the termination petition regarding Mother's first child was pending and was removed two days after birth.

¶5 A few weeks prior to S.W.'s birth, J.B., the man Mother believed to be S.W.'s father, was arrested for assaulting a security guard in Mother's apartment building. A few days after this incident, Mother informed a social worker with the Department that J.B. had recently assaulted her. Mother appeared with bruising and swelling around both eyes. The Department had ongoing concerns about Mother's ability to protect her

children from exposure to violent individuals, based in part on similar circumstances surrounding the removal of K.L. two years earlier. The Department was also concerned about Mother's ability to maintain basic hygiene and provide for S.W.'s basic needs. Mother needed frequent reminders to bathe and wash her clothes. Mother had not obtained adequate supplies, such as diapers and clothing, for the care of the newborn. Mother has significant cognitive limitations and an I.Q. of 69. She has no source of income other than public assistance.

¶6 On August 22, 2013, Mother and the Department entered a treatment plan requiring the following tasks: complete a parenting assessment; complete parenting training; complete an in-home parenting program; address mental health issues; maintain a safe and stable home environment; have enough income to meet S.W.'s needs; attend every scheduled visit with S.W.; maintain consistent, appropriate contact with S.W.; sign all necessary releases; and contact the Department on a weekly basis.

¶7 On February 19, 2014, the Department petitioned to terminate Mother's parental rights, claiming she had failed to successfully complete her treatment plan. A termination hearing was held on April 10, 2014. At the termination hearing, psychologist Susan Day testified that Mother exhibited unrealistic thinking and poor judgment about complex situations. Day also testified that Mother's hygiene was quite poor, and that Mother was unable to identify areas she needed to work on as a parent. Day described Mother's problems as "chronic" and "intractable." Mother's therapist, Sarah Karls, testified that "employment did not seem to be on [Mother's] radar," and that Mother intended to remain in a long-term, family relationship with J.B. Julie Trosper supervised

3

Mother's visits with S.W., and testified that "it was a struggle" for Mother to learn to care for S.W. "without always having to be told what to do." Trosper said Mother had "really kind of unrealistic expectations, like he was a little adult rather than an infant."

¶8 Child Protective Specialist Isaac Jessee testified that Mother received in-home parenting services, but was never able to progress to the family-based services stage that would have preceded reunification. Jessee testified that although Mother was able to maintain a residence, the Department was concerned about her ability to provide a safe home environment because she appeared unable to recognize threats to S.W.'s safety from violent individuals. Jessee testified that although Mother received public assistance and performed some volunteer work, she had taken no steps to obtain employment and was unable to articulate how she would provide for the child's needs. Jessee testified that although Mother's attendance at parenting education, counseling, and visitation had been generally good, her actual progress in those programs was unsatisfactory. The District Court ordered termination of Mother's parental rights after finding that Mother had not successfully completed her treatment plan and that the conditions rendering her unfit to parent were unlikely to change within a reasonable time.

¶9 We review a district court's termination of parental rights for abuse of discretion. *In re J.W.*, 2013 MT 201, ¶ 25, 371 Mont. 98, 307 P.3d 274. We review a district court's conclusions of law for correctness and its findings of fact for clear error. *J.W.*, ¶ 25. A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if we are left with the definite and

4

firm conviction that a mistake has been made. *In re S.B.C.*, 2014 MT 345, ¶ 17, 377 Mont. 400, 340 P.3d 534.

¶10 A court may order termination of the parent-child legal relationship if it finds by clear and convincing evidence that the child is an adjudicated youth in need of care, an appropriate treatment plan has not been complied with or been successful, and the conduct or condition of the parent rendering her unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. It is not sufficient merely to comply with the tasks assigned by a treatment plan; the treatment must also be successful. *In re S.M.*, 2001 MT 11, ¶ 44, 304 Mont. 102, 19 P.3d 213. In determining whether the condition of the parent is unlikely to change, the court must consider, among other factors, any mental deficiency of the parent that renders the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child. Section 41-3-609(2)(a), MCA.

¶11 Mother argues there was insufficient evidence supporting the District Court's finding that the condition rendering her unfit to parent was unlikely to change within a reasonable time. The evidence before the District Court showed that Mother had been receiving services from the Department since the removal of her older child in 2011. The Department's concerns about Mother's ability to provide for the children's needs and recognize threats to their safety remained consistent throughout that time. Day testified that Mother had problems with complex reasoning and judgment that were "chronic" and "intractable." Mother had difficulty identifying the areas in which she struggled and needed to develop as a parent. Trosper testified that Mother continually needed to be told

what to do to provide daily care for S.W., and that this did not change over months of supervised visits. Jessee testified that despite participation in services, Mother had not successfully addressed aspects of the treatment plan involving her relationships with violent individuals and her ability to provide an income to support S.W. The District Court's finding that the condition rendering Mother unfit to parent was unlikely to change within a reasonable time was supported by substantial evidence and was not clearly erroneous. The District Court did not abuse its discretion when it terminated Mother's parental rights to S.W.

¶12 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for memorandum opinions. The District Court's findings of fact are supported by substantial evidence and there clearly was not an abuse of discretion.

¶13 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE